IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 2:16cv985-WHA |
| | ) | (WO) |
| $389,820.00 IN UNITED STATES CURRENCY, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This *in rem* action is before the court on a Motion to Dismiss filed by claimant, Ruby Barton ("Barton"), as Executor of the Estate of Rodriguez Garth, (Doc. # 14) and a Motion to Strike filed by the United States (the "Government") (Doc. # 15).

In her Motion to Dismiss, Barton argues that this court lacks *in rem* jurisdiction over this case because *in rem* jurisdiction first attached and remains in state court (Doc. # 14). In response, the Government argues, even if *in rem* jurisdiction first attached in state court, it voluntarily relinquished jurisdiction when it issued a turnover order of the property to this court (Docs. # 17, 18, & 20). Barton replies that a state court may not divest its *in rem* jurisdiction without a judgment on the merits on that claim (Doc. # 23). Barton has filed a claim in this court, but contends that the state court has jurisdiction.

In the Government's Motion to Strike, the Government contends that Barton lacks standing to assert a claim, because the deadline for filing her claim and Motion to Dismiss have passed (Doc. # 15). The Government contends that this court has jurisdiction, not the state court. In response, Barton concedes that her filings were untimely; however, she submits that if the court

has jurisdiction over this action, the court should exercise its discretion in extending the deadlines for both filings (Doc. # 22).

For the reasons that follow, both Motions are due to be DENIED.

## II. FACTS

The Verified Complaint, claims, exhibits to pleadings, and briefs show the following facts:

On May 13, 2016, the Millbrook Police Department responded to a 911 telephone call stating Rodriguez Lakeith Garth ("Garth") had been shot. Police and medical personnel responded to the call and located Garth at a local Sonic Drive-In restaurant. Officers observed multiple gunshot sized holes through the driver's side window of Garth's Mercedes vehicle. Garth was transported to Baptist South Hospital in Montgomery, Alabama for treatment. Afterwards, officers seized Defendant $4,550.00 from the vehicle and Garth's person (Doc. # 1).

An investigation later revealed that Garth had been shot at his residence in Millbrook, Alabama and that he had driven himself to the Sonic Drive-In. This information led officers to obtain a search warrant for Garth's residence. Judge Glenn Goggans of the Elmore County District Court, an Alabama state court, issued the search warrant on May 14, 2016, the day after the shooting (Doc. # 17-1). The warrant authorized officers to search Garth's residence for evidence related to the shooting. Multiple officers, making up a joint task force of state and federal law enforcement officers, were involved in the execution of the warrant, including Officer Talley of the Elmore County Sheriff's Office, members of the DEA Montgomery residence office, and agents from the Central Alabama Drug Task Force.

Upon entry into Garth's residence, officers noticed the presence of illegal narcotics and assorted firearms. Judge Goggans then issued a second search warrant (Doc. # 17-3), which allowed officers to search Garth's residence and any vehicles on the property and to seize evidence

of illegal narcotics, in addition to evidence related to the shooting. During the search of the residence, the garage, and the car in the garage, officers found and seized four "totes" containing 11 "bundles" of marijuana, eight "bundles" of marijuana in a closet, four gallon-size plastic bags of cocaine, a digital scale, a Ruger LCP pistol, a Ruger P35 pistol, 6 cellular telephones, assorted jewelry (of which at least some pieces are Defendants in this action), "AR" 15 magazines, assorted documents, and several large quantities of U.S. currency, including Defendants $15,780.00 and $389,820.00. Officers also seized three (3) vehicles from Garth's residence, including the Mercedes driven by Garth on the day of the shooting, the Defendant Chevrolet Chevelle, and a Cadillac DTS (Docs. # 14-1, 17-5).

Garth died on June 16, 2016, about a month after the shooting. Plaintiff Barton subsequently became Executor of Garth's estate.

The Defendants were transferred to the DEA's possession and administrative forfeiture proceedings were commenced. On July 27, 2016, Barton, in her capacity as Executor, filed a claim with the DEA asserting ownership of the Defendant currency. A little over two months later, on September 29, 2016, Barton filed another claim with the DEA asserting ownership over the Defendants Chevrolet Chevelle and Miscellaneous Jewelry. These claims with the DEA brought about the end of the federal administrative proceedings in this case (Doc. # 17).

On December 20, 2016, the United States filed a Verified Complaint in this court, seeking forfeiture of the Defendants *in rem* (Doc. # 1), Warrant of Arrest in Rem was issued on December 21 and returned as executed on December 28 (Doc. #3-7). Barton received notice of the Government's Complaint on December 30, 2016 (Doc. # 9).

On February 15, 2017, Barton filed a claim for the Defendant property in this court (Doc. # 12).

On March 17, 2017, Barton filed a suit in the state Circuit Court for the 19th Judicial Circuit, Civil Action No. CV-17-900092, seeking return of the Defendant property on the basis that no state forfeiture action had been timely filed by the state and, therefore, the estate of Garth was entitled to the property pursuant to Code of Ala., 1975, § 20-2-93(c). (Doc. # 22-2).

On March 22, 2017, Barton filed the Motion to Dismiss for Lack of Jurisdiction now before the court and on March 24, 2017, the Government filed its Motion to Strike.

On April 6, 2017, the District Attorney for the state 19th Judicial Circuit filed an Ex Parte Motion for Turnover Order in the Elmore County District Court, reciting that no state forfeiture action *in rem* was pending in state court and that it was in the best interest of justice that the Defendant property in this case be turned over for federal forfeiture proceedings, which Judge Goggans, the state court judge who had issued the search warrant, granted by ordering the turnover. (Doc. # 17-6).

On April 11, 2017, Judge Goggans vacated his April 6th Order on the basis that Barton's state court suit was pending in the state circuit court, not his district court, at the time he entered his order. (Doc. # 24-2).

Then, on May 2, 2017, the state District Attorney filed a Motion for Turnover Order in the state court case before the Elmore County Circuit Court requesting that court to enter an order to turnover the Defendant property for purposes of this federal forfeiture proceeding, thereby relinquishing any jurisdiction that court might have over the property. (Doc. # 26-1).

On May 3, 2017, Circuit Judge Sibley G. Reynolds entered an Order to Turn Over Property, granting the State's motion. (Doc. # 26-2).

The basis for Barton's Motion to Dismiss is that the state court had jurisdiction of the property at the time she filed her suit in the state circuit court and continues to have jurisdiction

4

until that case is disposed of, to the exclusion of jurisdiction by this court. The Government denies that contention and also, by its Motion to Strike the Verified Claim, contends that Barton filed her claim after the deadline for doing so under Supplemental Rule G(5)(b).

The court held oral argument on June 7, 2017, where it heard arguments from the parties regarding the merits of both Motions. The parties filed supplemental briefs on June 21, 2017 (Docs. # 35 & 36).

### III. MOTION TO DISMISS STANDARD

A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." A "facial attack" on the complaint requires the court to assess whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). A "factual attack," on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings. *See id.* Under a factual attack, the court may hear conflicting evidence and decide the factual issues that determine jurisdiction. *See Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). The burden of proof on a Rule 12(b)(1) motion is on the party averring jurisdiction. *See Thomson v. Gaskill*, 315 U.S. 442, 446 (1942).

### IV. DISCUSSION

The case before the court primarily involves a question of whether *in rem* jurisdiction over seized property is properly exercised in this court, or lies in the state court. The court will begin with an examination of the basis for exercising jurisdiction over property seized by state officials, and then will discuss how property can be, and was in this case, transferred by a state court, allowing for *in rem* jurisdiction in federal district court.

#### A. Jurisdiction In Forfeiture Cases

1. Federal and State Authority

Forfeiture actions can be brought in both federal and state court. In federal court, subject matter jurisdiction for federal civil forfeiture is conferred by 28 U.S.C. § 1355(a); the authority to forfeit is provided by 21 U.S.C. § 881; and the rules of procedure for pursuing a civil forfeiture are provided by 18 U.S.C. § 983. Additionally, Title 21 U.S.C. § 881 authorizes forfeiture of illicit-drug-related property to the United States, including "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance" and "all proceeds traceable to such an exchange." 21 U.S.C. § 881(a)(6).

In state court, under Alabama statutory law, Ala. Code § 20-2-93(b), property used in the furtherance of the unlawful sale of controlled substances, "may be seized by state, county or municipal law enforcement agencies upon process issued by any court having jurisdiction over the property." Moreover, such process may be issued in the form of a search warrant issued pursuant to Ala. Code § 15-5-14.

While forfeiture actions can be brought in both state and federal court, a state court and a federal court "cannot simultaneously exercise in rem jurisdiction over the same property." *United States v. $270,000.00 in U.S. Currency Plus Interest*, 1 F.3d 1146, 1147 (11th Cir.1993). In order to avoid this conflict, "the principle, applicable to both federal and state courts, is established that the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other." *Id.* at 1148. Once a state court has assumed jurisdiction over a res, a federal court cannot assert jurisdiction over the same res until it has been transferred pursuant to state statute or by a turnover order from the state court. *United States v. One 1987 Mercedes Benz Roadster 560 SEC, VIN WDBBA48D3HA064462*, 2 F.3d 241, 243 (7th Cir.1993). Therefore, when

parties assert competing claims to the same property in state and federal court, the first question to resolve is where *in rem* jurisdiction first attached.

2. When *In Rem* Jurisdiction Attaches Under Alabama State Law

Traditionally, Alabama courts had interpreted Ala. Code § 20-2-93 as requiring a two-step process for *in rem* jurisdiction to attach in a state court: (1) possession of the *res*, followed by (2) the filing of an *in rem* action in state court. *See Green v. City of Montgomery*, 55 So. 3d 256, 263 (Ala. Civ. App. 2009). Under that analysis, *in rem* jurisdiction attached in state court after property was seized only once an *in rem* action was brought in state court. If, after possessing property, instead of commencing an *in rem* action, state officials instead gave the property to federal authorities for the purpose of commencing forfeiture proceedings, and the federal authorities accepted the transfer of the property, *in rem* jurisdiction attached first in federal, not state, court through a process known as "adoptive forfeiture." *Ervin v. City of Birmingham*, 137 So. 3d 901, 905 (Ala. 2013) ("Under the adoptive forfeiture doctrine, the United States' adoption of the State's seizure of the plaintiffs' cash has the same effect as if the government had originally seized the currency . . . And it is the federal district court that has original jurisdiction of a federal forfeiture action.") (alterations incorporated and citations omitted). These principles of law governing the attachment of *in rem* jurisdiction were the governing principles under forfeiture law in Alabama when the Verified Complaint was filed in this case.

During the pendency of this case, however, the Alabama Court of Civil Appeals decided *Little v. Gaston*, __ So. 3d __, No. 2150889, 2017 WL 836553 (Ala. Civ. App. Mar. 3, 2017), in which it distinguished *Green* and clarified state forfeiture law. In *Little*, the court explained that when property is seized pursuant to a state court-issued warrant, the state court acquires constructive possession of the seized property upon the moment of seizure, and *in rem* jurisdiction

7

attaches in the warrant-issuing state court, "which it retains until it orders otherwise." *Id*. at *3 (citing *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 88 (1992)).

In setting forth its analysis, the court in *Little* distinguished its decision from its earlier decision in *Green v. City of Montgomery*. *See* 2017 WL 836553 at *4–5. In *Little*, property was seized pursuant to a search warrant issued by a state court. In *Green*, property was seized without a warrant during a lawful traffic stop. *Id.* at 4. In both cases, state authorities informally transferred the property to federal authorities after its seizure and federal authorities commenced forfeiture proceedings under federal law. The court in *Little* reasoned that the state officers did not have the authority to release the property "to the control of the [federal authorities] without an order from the trial court." *Id*. at *5. Moreover, it was not significant that the federal authorities had physical possession of the property because "mere possession by federal agents does not amount to control for the purposes of establishing federal *in rem* jurisdiction." *Id.* Instead, the warrant-issuing state court retains constructive control over the property under § 15-5-14[1] upon the seizure of the property, "which it retains until it orders otherwise." *Id*. at *3.

Post-*Little*, therefore, it appears that in a case in which state officials seize property without a warrant, *in rem* jurisdiction attaches in state court with the commencement of an *in rem* proceeding. If the property is seized without a warrant and handed over by state officials and accepted by federal officials, then, under adoptive forfeiture, *in rem* jurisdiction first attaches in

---

[1] Ala. Code § 15-5-14 provides, in relevant part, "When the property is taken under a search warrant, it shall be delivered to the court issuing the warrant. . . . If the warrant was issued on the grounds specified in subdivisions (2) and (3) of Section 15-5-2, the officer effecting the warrant shall retain the property in his possession, subject to the order of the court to which he is required to return the proceedings or of the court in which the offense is triable in respect to which the property was taken."

8

federal court; but where state officials seize property pursuant to a state-issued warrant, *in rem* jurisdiction attaches in state court at the time the property is seized. *Id.*

In this case, on March 14, 2016, Elmore County District Court Judge Glenn Goggans issued two search warrants, authorizing officers to search Garth's residence and seize any evidence related to the March 13, 2016 shooting and for any evidence related to illegal narcotics. A joint task force made up of officers from both state and federal law enforcement agencies, including the Elmore County Sheriff's Office, the Central Alabama Drug Task Force, and the federal Drug Enforcement Administration went to Garth's residence to execute the warrant. During the course of their search, officers seized Defendants, $389,820.00 in United States currency, $15,780.00 in United States currency, $4,550.00 in United States currency, 1972 Chevrolet Chevelle, and Miscellaneous Jewelry.[2] Accordingly, because property was seized pursuant to a state court warrant, under *Little*, *in rem* jurisdiction attached in the Elmore County District Court upon the seizure of the Defendant property. *See id.* The issue of when *in rem* jurisdiction attached is not, however, the end of the inquiry in this case.

3. Transfer By the State Court Allows Jurisdiction to be Exercised in Federal Court

a. Authority to Transfer

Barton's position in this case is that because the Elmore County District Court first had *in rem* jurisdiction under *Little*, it still has *in rem* jurisdiction. Barton contends that there is no "state

---

[2] The Verified Complaint states that Defendant, $4,550.00 in United States currency, was seized from Garth's vehicle prior to the issuance of any warrant, after officers found him shot in his car at a Sonic Drive-In in response to a 911 call regarding the shooting, but before he was transported to Baptist East Hospital. (Doc. # 1). However, in the Government's Response, the Government attaches a copy of the turnover order in which Judge Goggans states that Defendant $4,550.00 was seized pursuant to a search and seizure warrant. (Doc. # 17-6). Therefore, for purposes of this opinion, the court will assume that all Defendants were seized pursuant to a validly executed search and seizure warrant.

9

statutory authority authorizing the transfer of a case from state to federal court where the state court has lawful *in rem* jurisdiction over the case." (Doc. # 36 at p.9). The Government does not dispute that if *Little* applies,[3] the Elmore County District Court first exercised *in rem* jurisdiction. The Government takes the position, however, that while the Elmore County District Court first exercised *in rem* jurisdiction, it voluntarily relinquished *in rem* jurisdiction to this court when it issued a turnover order, and thereafter transferred the Defendant property to the custody of the DEA (Doc. # 17, p. 5).

Turnover orders by state courts appear to be a generally accepted mechanism in other jurisdictions for transfer of forfeited property by state authorities to federal authorities. *See United States v. $84,940 in U.S. Currency*, 86 Fed. App'x. 978, 982 (7th Cir. 2004) (holding that, under Wisconsin statutory forfeiture law, a federal court cannot subsequently exercise *in rem* jurisdiction over the *res*, unless it has been transferred pursuant to a state statute or by a turnover order from the state court); *Scarabin v. Drug Enf't Admin.*, 966 F.2d 989, 995 (5th Cir. 1992) (holding that, under Louisiana statutory forfeiture law, the DEA must "first seek a turn over order from the state court, or wait until that court relinquishes control over the res" before proceeding with a federal forfeiture complaint); *One 1987 Mercedes Benz Roadster*, 2 F.3d 241 (7th Cir. 1993) (in a case describing the application of Indiana law which existed before statutory amendment, stating that " 'a turnover order from the circuit court of the county in which the [res] was seized' is the

---

[3] The court disagrees with the Government's argument that *Little* does not apply because the participation of federal officers made the search federal in nature (Doc. # 17). Members of a joint task force, which included officers from both state and federal agencies, conducted the search. Moreover, and perhaps most important, the search and seizure of Defendant property was conducted pursuant to two warrants issued by a state court, not upon a warrant issued by a federal court. The court in *Little* stated that it would have been beyond the state court's authority to issue a warrant to an agent in his capacity as a federal agent. *Little*, 2017 WL 836553, at *3. Therefore, the warrant authorized seizure by state officials in this case.

appropriate method for seeking authority for a transfer from state authorities to federal authorities. Lacking a turnover order, federal authorities did not obtain lawful possession of the res.'") (citation omitted); *United States v. $25,000 in U.S. Currency*, No. C-03-2547-SC, 2003 WL 22159054, at *5 (N.D. Cal. Sept. 16, 2003) (finding under a California statutory forfeiture law (with the same language "subject to the order of the court" language found in Ala. Code § 15-5-14) that "the Defendant currency could not be handed over to the federal government without a state court turnover order because the state court had already exerted *in rem* jurisdiction over the property).

Under Alabama statutory law, when a warrant is issued pursuant to §§ 15-5-2(2) and 15-5-2(3), "the officer effecting the warrant must retain the property in his possession, *subject to the order of the court* to which he is required to return the proceedings or of the court in which the offense is triable in respect to which the property was taken." Ala. Code § 15-5-14 (emphasis added). A plain reading of this language shows that the statute allows for the transfer of property by the warrant-issuing state court. That is, although an officer is under a duty to retain possession of property seized under §§ 15-5-2(2) or (3)—and, as the court found in *Little*, the state court "assumes constructive control over the seized property, which it retains *until it orders otherwise*," 2017 WL 836553, at *4 (emphasis added)—the court may order its transfer and, therefore, relinquish its control over that property at that moment. *See United States v. $7,050.00 in United States Currency*, No. 2:15cv958-WC, 2016 WL 4257044, at *6 & n.6 (noting, before *Little* was decided, that cases applying the law of other states "have concluded that *in rem* jurisdiction does automatically vest, and that a 'turnover order' is required to divest the state court of jurisdiction and permit a federal court to assert jurisdiction over property seized pursuant to state law."). Because Ala. Code § 15-5-14 gives a warrant-issuing state court discretion to order the transfer of property to federal authorities, Alabama courts may relinquish control over the res through a

11

turnover order which transfers control of the property to federal authorities, and a federal court may then exercise *in rem* jurisdiction over the same property in a forfeiture proceeding.

In this case, there is no dispute that the Elmore County District Court ordered the transfer of the property to the DEA for forfeiture (Doc. # 17-6). On April 6, 2017, Elmore County District Court Judge Goggans issued a "turnover order" relinquishing any control over the subject property "for purposes of Federal forfeiture proceedings." *Id*. When the DEA accepted the property, the property was subject to the exclusive *in rem* jurisdiction of this court. *See United States v. $178,858.00 in U.S. Currency*, No. 2:06-CV-01651-RDP, 2013 WL 5524699, at *5 (N.D. Ala. Oct. 3, 2013), *aff'd sub nom. United States v. Currency, In U.S. $178,858.00*, 569 F. App'x 649 (11th Cir. 2014) ("The threats posed to federalism and comity by the usurpation of jurisdiction or the maintenance of parallel proceedings are nonexistent in the present situation, as the state court has made no attempt to assert *in rem* jurisdiction.").

### b. Barton's Arguments as to the Validity of the Transfer

Barton has advanced several arguments as to why, even if a state court may have the authority to order transfer of control of property seized pursuant to a state court-issued warrant, the purported turnover order of the Elmore County District Court in this case was invalid, so that jurisdiction is still being exercised in state court. Barton has pointed out that the Elmore County District Court rescinded its initial transfer order. Barton also relies on the fact that she was proceeding in state court and that that case had not been brought to final judgment. Barton contends that she had no notice of the turnover order to this court, impairing her due process rights. Barton finally objects that the language of the turnover order in this case did not purport to relinquish jurisdiction, but only transferred possession of the property, and so was ineffective.

The court begins with the latter of these arguments first. As discussed above, a state court can order transfer of control of property seized pursuant to state court warrant through a turnover order. The effect of this is to transfer the res to federal authorities, pursuant to which the federal court then exercises *in rem* jurisdiction. The initial transfer order, signed by Judge Goggans, who issued the search warrants, orders a motion granted which seeks a "turn over" of property "to the DEA for purposes of Federal forfeiture proceedings, thereby relinquishing any jurisdiction this court may now have over the said property." (Doc. #17-6).

In addition, it appears to the court that it is the possession, or more precisely, the right to possess, the property that is being transferred to federal authorities through a turnover order that determines the issue in this case, rather than a transfer of jurisdiction. In "adoptive forfeiture," it is the right to control property which is transferred. *United States v. Currency, In U.S. $178,858.00*, 569 F. App'x 649, 650 (11th Cir. 2014) (stating "the doctrine of "adoptive forfeiture"—under which a federal court can adopt a state or local seizure and subsequently deem the property to have been seized by the federal government . . . .") Because *Little* is a new decision, and the cases which apply the concept of "adoptive forfeiture" when a state official transfers possession to a federal official arose before *Little* was decided, the court hesitates to conclude that "adoptive forfeiture," as a concept, applies in the context of a turnover order. It is, however, apparent that the transfer being made pursuant to a turnover order is of control of property, similar to an "adoptive forfeiture." *See $178,858.00 in U.S. Currency*, 2013 WL 5524699, at *5 (stating "[w]hether or not the 'adoptive forfeiture' label is affixed to the present case, the doctrine's operative characteristic (i.e., state court complicity in federal forfeiture proceedings) is present in instant case, and that eliminates any concern that animate the so-called 'rule of prior exclusive jurisdiction.'"). In *Little*, the court explained that a state search warrant commands that the state law enforcement officer

who seizes the property "shall retain possession of the property subject to further orders of the court," and that "a court issuing a search warrant . . . assumes constructive control over the seized property, which it retains until it orders otherwise." *Little*, 2017 WL 836553, at *3. Because it is transfer of possession which is at issue, in this case, in which the state court ordered transfer of the property, the wording of the state court order does not defeat *in rem* jurisdiction in this court.

Barton's argument that the district court rescinded its turnover order was an argument made in a brief filed in this court prior to the second turnover Order on May 3, 2017 by the Elmore County Circuit Court. On May 3, 2017, the Elmore County Circuit Court ordered the property transferred to the DEA "pursuant to the authority in *Little v. Gaston* . . . ." (Doc. # 26-2). Therefore, whether the Elmore County District Court's order rescinding its initial turnover order could have any effect on that court's continued exercise of *in rem* jurisdiction, or this court's subsequent exercise of *in rem* jurisdiction, that issue has been rendered moot by the Order entered by Circuit Court of Elmore County. As a result, the state has properly transferred the property to federal agents for the pursuit of forfeiture under federal law as authorized under Ala. Code 15-5-14.

As to Barton's argument that her state court action was not brought to final judgment and, therefore, the state court still has jurisdiction, the United States responds that the case law Barton relies on is inapposite because the cases deal with divesting jurisdiction by another court, not transfer to another court.[4]

---

[4] Barton has also argued that the state court did not promptly initiate a forfeiture action in compliance with Ala. Code §20-2-93(c). While there is a limit on the time in which a state court has to initiate a forfeiture proceeding, and there may even be a requirement that there must be prompt action for turnover orders under state law, this court's ability to proceed with forfeiture is not affected by those state law limits. *Cf. United States v. $639,470.00 U.S. Currency*, 919 F. Supp. 1405, 1414 (C.D. Cal. 1996) (stating that the "federal government's approval of the state's request made late and in violation of state procedural rules was the end of the issue" and the federal court had jurisdiction through adoption). Moreover, in this case, given the prompt action by state and federal officials, which was required because of the intervening decision of *Little*, a

One case relied on by Barton, *Steensland v. Alabama Judicial Inquiry Com'n*, 87 So.3d 535, 542 (Ala. 2012), held that a retirement did not deprive the Judicial Inquiry Commission from exercising jurisdiction to adjudicate charges in a complaint, and there is no discussion of any transfer. Other cases, such as *Glazner v. Jenkins, Judge*, 186 So. 475, 476 (Ala. 1939), stand for the broad proposition that the "first court which acquires jurisdiction of the same cause of action between the same parties should proceed with it to a final disposition and cannot be deprived of this authority or duty to do so by a subsequent suit in another court of concurrent jurisdiction."

In this case, the state court could and did relinquish control over the property by its order. The federal court is not divesting or depriving the state court of its jurisdiction. Instead, the state court transferred the property, which allowed the federal court to exercise jurisdiction. *Cf. $25,000*, 2003 WL 22159054, at *5 (stating "the Defendant currency could not be handed over to the federal government without a state court turnover order because the state court had already exerted *in rem* jurisdiction over the property.")

In addition, as Alabama courts have recognized, there is a distinction between *in rem* jurisdiction over the res and jurisdiction over the case. *See Ervin*, 137 So.3d at 904. Transfer of the property did not by itself conclude the case filed by Barton in state court, and this court expresses no opinion, and has no authority to comment on, proceedings which are still ongoing in the state court case. In short, the court cannot conclude that the precedent Barton relies on undermines the authority of a state court, in its own case, to order transfer of the right to control property to federal authorities.

Regarding her notice argument, Barton does not cite any authority requiring such notice. The Eighth Circuit has analyzed a due process argument in the context of an adoptive forfeiture

---

prompt action seems to have occurred.

15

and has explained that "because the DEA could adopt the seizure even if the MSHP was without authority to transfer the property seized, because due process does not require any notice prior to such an adoption, and because due process is not concerned with the identity of the sovereign seeking to forfeit the seized property, but with the forfeiture action itself," due process rights were not violated by the adoptive seizure. *Madewell v. Downs*, 68 F.3d 1030, 1039–40 (8th Cir. 1995). This court concludes that the same analysis applies here, and the turnover order was effective to create *in rem* jurisdiction in this court.

    c. Barton's Argument That This Court Cannot Exercise of Jurisdiction After Transfer

In addition to the arguments as to the state court's authority under state law, Barton has also argued that this court did not have jurisdiction at the time that the Verified Complaint was filed, and, therefore, does not currently have jurisdiction. Specifically, Barton argues that because the Elmore County District Court did not issue a turnover order until after the Government filed the Verified Complaint in this case, this court should dismiss this action, because, even if the turnover order confers *in rem* jurisdiction to this court, the turnover order cannot cure the defect that existed at the time of the Government's original filing. Barton further asserts that because the Government physically possessed the property before the turnover order gave it jurisdiction, the exercise of jurisdiction is invalid, citing *Green*.

*Green*, of course, is state law, so while the court has consulted it, and other state law cases to determine when the state had in rem jurisdiction, *Green* is not binding on this court as to its own exercise of jurisdiction.

The Government cites *United States v. $99,000*, No. 1:10cv138-SEB-DKL, 2011 WL 2470665 (S.D. Ind. June 17, 2011). In that case, property was seized pursuant to a search warrant issued by an Indiana state court. Later on, but before the state court issued a turnover order of the

16

property, a federal forfeiture complaint was filed in federal court. Afterwards, the state court executed a turnover order transferring the property to federal authorities to pursue forfeiture in federal court. The claimant challenged the federal court's exercise of *in rem* jurisdiction, arguing that the district court lacked jurisdiction to conduct federal forfeiture proceedings. The court explained that even assuming that the state court had exercised jurisdiction over the property, the property was subsequently transferred by turnover, which gave the court jurisdiction over the res. *Id*. at *5. In essence, the federal court acquired *in rem* jurisdiction over the property when the state court issued a transfer order, and it did not matter that the federal court did not have jurisdiction at the time of the government's original filing.[5]

In this case, the Government filed a Verified Complaint on December 20, 2016. *Little* was subsequently decided, which revealed that *in rem* jurisdiction had attached in state court. This court had subject matter jurisdiction in this case at the time the Verified Complaint was filed. The Elmore County District Court issued a turnover order in response to *Little*, relinquishing any control over the subject property "for purposes of Federal forfeiture proceedings" which then gave this court jurisdiction over the property (Doc. # 17-6). Therefore, as in *$99,000*, the court finds any lack of jurisdiction over the property that was within the constructive control of the state at the time of the Government's original filing, does not affect the court's jurisdiction over the property now that it has been properly turned over to the federal authorities for forfeiture. The fact that Barton filed suit in state court seeking return of the property under state law cannot defeat the

---

[5] The court in *$99,000* went on to find that any time limitations related to the state's ability to initiate forfeiture proceedings against property after its seizure did not apply to the state's ability to turnover property to the federal government. The court reflected, "while the state had lost its ability to initiate its own forfeiture proceedings . . . it was nonetheless permitted to hold the property until either the final disposition of the case or it transferred the property to federal authorities [under state law]." *Id*. at *6.

right of the United States to proceed with forfeiture under federal law after the state court exercised its right to transfer control of the property itself under state law. The court concludes, therefore, that it has jurisdiction in this case, and the Motion to Dismiss is due to be DENIED.

### B. Barton's Ability to Proceed with Her Claim In This Court

In its Motion to Strike the Verified Claim, the Government argues that Barton lacks standing to assert a claim to the Defendant property because she failed to file a timely claim and to file a timely Motion to Dismiss under Rules G(4)(b) and G(5)(b) of the Supplemental Rules— Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") (Doc. # 15). Rule G(4)(b) states that a notice for filing a claim must state "a deadline for filing a claim, at least 35 days after the notice is sent."[6]

In this case, the direct notice provided 35 days from its service to file a claim. The notice was served on December 30, 2016. The deadline, therefore, was February 3, 2017. Barton filed her claim on February 15, 2017; 12 days after the deadline.

Rule G(5)(b) provides "A claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim." As mentioned previously, Barton filed a claim on February 15, 2017. Therefore, the deadline for filing an answer or motion under Rule 12 was March 8, 2017. Barton filed her Motion to Dismiss on March 22, 2017; 14 days after the deadline. Because Barton missed both of these deadlines, and because, the Government argues, both requirements must be strictly complied with to satisfy the statutory requirements of standing,

---

[6] In its First Supplemental Response to Barton's Motion to Dismiss, the Government also argues Barton has waived her right to challenge the court's *in rem* jurisdiction by failing to timely include this objection in a Motion to Dismiss. The analysis below with regard to timeliness also applies to this waiver argument.

the Government contends that Barton does not have standing to assert a claim to the Defendant property in this case.

While the Government is correct that Barton's claim and Motion were filed after the deadlines as calculated from the filing of the original Verified Complaint, and the court may require strict conformance with the rules in most cases, the court has discretion to extend the time for filings in certain instances.

> Among the factors the district court should consider in determining whether to exercise its discretion include: the time the claimant became aware of the seizure, whether the Government encouraged the delay, the reasons proffered for the delay, whether the claimant had advised the court and the Government of his interest in defendant before the claim deadline, whether the Government would be prejudiced by allowing the late filing, the sufficiency of the answer in meeting the basic requirements of a verified claim, and whether the claimant timely petitioned for an enlargement of time.

*United States v. $125,938.63*, 370 F.3d 1325, 1328–29 (11th Cir. 2004). In this case, all of these factors weigh in favor of extending the deadlines in Barton's favor. Although Barton has been aware of the Government's seizure for almost a year, as evidenced by the claim she filed with the DEA in August 2016, she has diligently pursued her claim to the Defendant property since that time. Moreover, during a hearing on Barton's Motion to Dismiss, Barton's counsel recounted the unique legal developments in *Little*, and Barton's good faith attempts to secure her rights to the Defendant property in light of those developments. These factors all weigh in favor of extending such deadlines in this case.

Moreover, in a case like this, where the court did not acquire *in rem* jurisdiction in the forfeiture action until the state court issued a turnover order, the court must consider the timeliness of Barton's claim and Motion in light of the date upon which *in rem* jurisdiction attached in federal court. It makes little sense to hold Barton to the Government's deadlines set forth in the

Government's Verified Complaint if this court did not have jurisdiction over the property at that time. Moreover, now that this court has acquired *in rem* jurisdiction, it would be inequitable to hold Barton to deadlines, which she may never have had to comply with if the state court had not turned the property over to this court for adjudication.

Upon consideration of these factors, the court finds that Barton has standing to assert a claim to the Defendant property in this case. Barton's claim and Motion to Dismiss were timely under the circumstances and do not affect her ability to pursue her claim in this forfeiture action. Accordingly, the Government's Motion to Strike Barton's claim is due to be DENIED.

## V. CONCLUSION

For the reasons stated herein, it is hereby ORDERED that Barton's Motion to Dismiss (Doc. # 14) and the Government's Motion to Strike (Doc. # 15) are DENIED.

It is further ORDERED that Barton has until July 14, 2017 to file an Answer.

Done this 28th day of June, 2017.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE