### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

UNITED STATES OF AMERICA,          }
                                }
       Plaintiff,            }
                                }
vs.                             }   Civil Action No. 2:16-cv-985-WHA
                                }
$389,820.00 in Lawful United States    }
Currency, et al.               }
                                }
       Defendants.         }

### DEFENDANT'S MOTION TO SUPPRESS

COMES NOW, the Defendant, Ruby Barton as the Executor of the Estate of Rodriquez Garth, by and through her attorney of record, Michael L. Kidd, hereby files the forgoing Motion to Suppress the Evidence Seized by Law Enforcement from the residence of 94 Breckinridge Court, Deatsville, Alabama and Brief in Support of the same, would state unto this honorable Court as follows, to-wit:

### I. BACKGROUND OF MOTION

Mr. Rodriquez Garth was shot two times in the chest while he sat inside his vehicle. The shots were fired from outside of the vehicle through the driver's door window. During the course of the investigation that night and later into the next morning, Elmore County investigators obtained a series of search warrants for the residence of 94 Breckinridge Court, Deatsville, Alabama the alleged location where the defendant was shot. The items that are the subject of this forfeiture proceeding were found pursuant to the executed search warrants at the residence.

## II. THE FEDERAL CHARGES

The Government has issued an in rem forfeiture action against the listed property pursuant to 21 U.S.C § 881(a)(6) seeking forfeiture pursuant to 21 U.S.C. § 841(a)(1) drug distribution and 846 (conspiracy to commit a violation of the Controlled Substances Act), of $389,820.00, $15,780, $4,550.00 a 1972 Chevrolet Chevelle, SS396 and miscellaneous jewelry.   On May 13, 2016 $4,550.00 and miscellaneous jewelry were seized from inside the vehicle Garth was driving and from Garth's person.   These items are not the subject of the forgoing Motion to Suppress.

## III. THE SEARCH AND SEIZURE OF PROPERTY

On May 14th, 2015 Investigator James Talley with the Elmore County Sheriff's Office tendered an application and affidavit in support of a search warrant for the residence of 94 Breckinridge Court, Deatsville, Alabama to Elmore County District Court Judge Glen Goggans.   The affidavit stated the following in support of probable cause.

On May 13th, 2015 at approximately 10:45 p.m., Rodriquez Garth called Elmore County 911 from the parking lot of the Millbrook Sonic, 77 Dudley Drive, Millbrook, Alabama.  He advised emergency responders that he had been shot while sitting in his car parked in the parking lot of the Liberty Convenience Store located three tenths of a mile away from his location.  Responding personnel found Mr. Garth behind the wheel of his Mercedes and observed two gunshot holes in the driver's

window of the vehicle.  Mr. Garth was seated in the vehicle with two apparent gunshot wounds to the left side of his chest.   He was conscious when first responders arrived and was able to communicate that he had been approached by an unknown black male subject who shot him two times through the window of the vehicle while he was parked at the Liberty Convenience Store.   Mr. Garth was rushed to Jackson Hospital where he was treated for his injuries.  On the way to the hospital he lost consciousness and approximately two weeks later he died from his injuries.   He never regained consciousness nor did he ever have the ability to communicate further with investigating officers.

Officers began their investigation and responded to the Liberty Convenience Store to investigate the alleged offense.  Although they were unable to secure any useful video, they did find a shell casing in the parking lot where Mr. Garth stated he had been attacked by the unknown assailant.   While conducting their investigation law enforcement was notified that a resident located at 74 Breckinridge Court, Deatsville, Alabama had contacted the Elmore County Sheriff's Office and advised an unknown female came to his house around 11:00 p.m. professing her husband had been shot and was in the back yard of 94 Breckinridge Court.  The unknown female was requesting assistance with regard to her alleged husband being in the back yard.  The resident advised he assisted the female by walking to 94 Breckinridge Court where he asked her to go inside the residence and turn on the exterior flood lights.  The female advised the house was locked and she did not have any keys to the house.  The resident then asked the female to position

one of the two cars located in the driveway of 94 Breckinridge Court so that the headlights from the car could illuminate the back yard. The female advised she did not have the keys to either vehicle. While at 94 Breckinridge Court the female received a call on her cell phone notifying her that the injured person was not in the back yard of the residence, but was actually at the Sonic in Millbrook. No deputies were dispatched to the location of 94 Breckinridge Court at that time. The resident returned to his house after the female left for the Millbrook Sonic. While inside the house the resident heard several vehicles arrive and leave from 94 Breckinridge Court. Alarmed by the unusual activity he contacted the Elmore County Sheriff's Office where he was identified as John Bloch.

Elmore County deputies responded to 94 Breckinridge Court where they observed what appeared to be fresh tire tracks in the lawn. It appeared someone left the location at a high rate of speed spinning tires in the grass. They also observed in the driveway one spent shell casing that was similar in nature to the shell casing previously located in the Liberty Convenience Store parking lot. The deputies stated the two cars in the drive belonged to Ruby Barton and Kenyse Savage, the mother and sister of Rodiquez Garth. While there they interviewed Mr. John Bloch, the resident at 74 Breckinridge Court.

Investigator James Talley traveled to Baptist South Hospital where Mr. Garth was transported for medical treatment. While at the hospital he interviewed Shanda Daniels. There he learned Ms. Daniels was the female that knocked on the door of 74 Breckinridge Court and asked Mr. John Bloch for assistance. Ms.

Daniels told Investigator Talley she had received a call from Rodiquez Garth around 10:30 p.m. advising he had been shot. She advised the reason she went to 94 Breckinridge Court was that was the only location in Elmore County Mr. Garth would go to seek help. The affidavit in support of the application for the search warrant is silent to a number of critical pieces of information; such as, why she believed 94 Breckinridge Court would be the only place in Elmore County he would travel for assistance. The affidavit does not state Investigator Talley inquired if Ms. Daniels was in fact married to Mr. Garth or if she had represented to Mr. Bloch at 74 Breckinridge Court she was married to him. The affidavit does not mention if Mr. Daniels acknowledged to Investigator Talley that she had in fact advised Mr. Bloch that Mr. Garth had been shot and was in the back yard of 94 Breckinridge Court, or more importantly why she believed this to be true.

In Investigator Talley's Affidavit, he stated he interviewed the Mother and the two sisters of Rodiquez Garth at Baptist Hospital and "they" advised they had no knowledge of him living at or frequenting a house in Elmore County. In an attached affidavit (Defendant's Exhibit B) Kenyse Savage denies she ever spoke to Investigator Talley at the hospital. She advised that she spoke with him the following morning by cell phone and that she never told Investigator Talley she had no idea why Mr. Garth would have been at 94 Breckinridge Court in Elmore County the night he was shot, because she knew this to be his residence. To the contrary, she advised Investigator Talley Mr. Garth resided at the residence located at 94 Breckinridge Court.

The affidavit submitted by Investigator Talley led to the issuance of a search warrant for the residence of 94 Breckinridge Lane.  The affidavit never conclusively stated the relationship between 94 Breckinridge Court and Mr. Garth. At best the affidavit makes a circumstantial conclusion the residence at 94 Breckinridge Cour *must* be related to Mr. Garth.  The affidavit submitted by Investigator Talley does not confirm 94 Breckinridge Court was the residence of Mr. Garth when in fact he had been told by Mr. Garth's sister the property was being leased by him.  The affidavit is silent as to who owned or leased the property, the name of the individual who had established utilities at the residence, or any statement from neighbors stating Mr. Garth occupied the residence.

The search warrant directed law enforcement to search the interior of the residence for evidence of an assault or shooting.  There was no testimony in the affidavit Mr. Garth shot back at the perpetrator or was armed with any type of gun. There was no mention of any type of blood drops or blood being found near the residence of 94 Breckinridge Court which would indicted after being shot, Mr. Garth exited his vehicle and went into the house.  Considering Mr. Garth as the victim of the crime, there is no theory stated in the affidavit as to why law enforcement would believe that the residence at 94 Breckinridge Court would harbor any evidence of the crime relating to the shooting of Mr. Garth.

Investigator Talley's theory of the case was that Mr. Garth was in the driveway of 94 Breckinridge Court. While in the driveway an individual walked up and shot two times through the driver's side window into Mr. Garth's car striking

him two times in the left side of his chest.  After being shot, Mr. Garth tore out of the driveway at a high rate of speed tearing up the neighbor's lawn on the way out of the drive.  He then traveled to Sonic in Millbrook where he called 911.  The only logical theory as to why you might expect to find evidence of this shooting inside the residence of 94 Breckinridge Court, is to conclude the perpetrator of the crime lived at the house or had some connection to it and after the shooting went inside and hid the gun, shell casings or other evidence relating to the shooting.  If the house belonged to Mr. Garth, this theory does not hold water; much less establish probable cause to believe evidence would be inside the residence.  By failing to include facts stating conclusively the house at 94 Breckinridge Court was the residence of Mr. Garth, Investigator Talley was able to constructively argue the perpetrator of the crime might have some connection to the house where he or she could have gone inside the residence and hid evidence of the crime within the confines of the house.  Had Investigator Talley conclusively stated he knew the house to be the residence of Mr. Garth, there would have been no logical argument to believe evidence of this shooting would be found within the residence under his theory of the case as presented to the magistrate.

The initial search warrant for the residence (Defendant's Exhibit A) was issued by Elmore County District Judge, Glenn Goggans at 8:10 a.m. on May 14th, 2015.  The warrant was issued to search the property for firearms, ammunition, spent ammunition casings and any other evidence related to the discharging of a firearm or physical altercation.  The during the initial search of the residence the

Elmore County Sheriff's Office did not find any evidence of a shooting, however they did find a large amount of marihuana. Once contraband had been found, the Sheriff's Department left the house, secured the residence and sought a second search warrant (Claimant's Exhibit B) with the probable cause for its issuance being the items of contraband found during the execution of the initial search warrant. During the second search warrant the items that are now the subject of the forgoing forfeiture proceeding were seized and taken into the possession of the Elmore County Sheriff's Office.

## IV. THE FOURTH AMENDMENT ILLEGAL SEARCH – THE LAW

The Fourth Amendment to the United States constitution protects the right of persons to be free from unreasonable searches and seizures. The protection of one's privacy within the confines of his own home is at the forefront of the protections of the Fourth Amendment. "The physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed," *Payton v. New York*, 445 U.S. 573 at 585. The Supreme Court has held when officers break the door of a home to arrest someone, they "invade the precious interest of privacy summed up in the ancient adage that a man's house is his castle." *Miller v U.S.*, 357 U.S. 301 at 307. "A search warrant may only be issued upon a showing of probable cause that evidence or instrumentalities of a crime or contraband will be found in the place to be searched." *Ex Parte Green*, 15 So.3d 489 (Ala. 2008) citing *United States v. Gettel,* 474 F.3d 1081, 1086 (8th Cir.2007). "The exclusionary rule is a judicially created

remedy designed to safeguard Fourth Amendment rights through its deterrent effect, and requires that evidence obtained through an illegal search be excluded from use by the government in a subsequent prosecution. *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002). The Supreme Court created a good-faith exception to this rule, stating that courts generally should not hold inadmissible evidence obtained by officers acting in reasonable reliance upon a search warrant later found to be unsupported by probable cause or technically insufficient. However there were exceptions to *Leon*. The *Leon* good-faith exception applies in all but four sets of circumstances. Those circumstances are: (1) where the judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing judge has " wholly abandoned" the neutral judicial role such that no reasonably well trained officer would rely on the warrant; (3) where the warrant is so lacking in indicia of probable cause that official belief in its validity is entirely unreasonable; and (4) where the warrant is facially deficient. *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421. *Leon*, 468 U.S. at 922.

Here, Mr. Garth was the victim of a shooting, not the perpetrator. He made a dying declaration he was shot inside his vehicle near the Liberty gas station on Deatsville Highway. The physical evidence corroborates his dying declaration in that there were two bullet holes in the driver's side window to correspond with the two gunshot wounds to his left chest. There was a shell casing found in the parking lot where he advised he had been shot.

Law enforcement attempts to draw a nexus between 94 Breckenridge Court and the shooting through the statement of Mr. John Bloch. Mr. Bloch stated at approximately 11:05 p.m. an unknown female described as the next door neighbor's wife knocked on his door and stated that her husband "had been shot and was in the back yard at the residence of 94 Breckenridge Court." The affidavit is silent as to why Mr. Bloch assumed the unidentified woman was in fact "the next door neighbor's wife". Did she tell him this? Had he seen her at the house on previous occasions, or did he just assume she was next door neighbor's wife? The affidavit also fails to establish the female's house was 94 Breckenridge Court. It merely states the "next door neighbor's wife" knocked on Mr. Bloch's door and the affidavit established Mr. Bloch lived at 74 Breckenridge Court. The affidavit is silent as to the proximity of 74 Breckenridge Court to 94 Breckenridge Court. Is there a 76, 78, 80, 82, 84, ect. Breckenridge Court or is 94 Breckenridge Court next door? In the fourth paragraph of page 2 of the affidavit, the female is referred to as "the next door neighbor's wife", and she states her husband is in "the back yard at the residence at 94 Breckenridge Court." Thus, it is not affirmatively stated 94 Breckenridge Court is in fact her residence or more importantly, the residence of Mr. Garth.

The affidavit also states that Mr. Bloch's daughter stated she heard what she thought were two gunshots around 11:00 p.m., five minutes prior to the unknown female showing up at his house asking for help. However, the time line established from other witnesses, established Mr. Garth was shot sometime around 10:25 or

10:30.  This is established by three different pieces of evidence, one the 911 call for service from Sonic, the place where Mr. Garth eventually stopped, was made at 10:48 p.m..  According to the affidavit, Mr. Garth's sister, Kenye Savage, spoke to Mr. Garth around 10:40 p.m. by phone where he advised he had already been shot. The affidavit also states the female at John Bloch's residence was Shanda Daniels and she spoke to Mr. Garth at 10:30.  She also stated Mr. Garth advised over the phone he had been shot.

The affidavit also states the affiant spoke to Kenye Savage at the hospital and she as well as her sister and mother told the affiant they had no idea why Mr. Garth would be in Elmore County or at the residence of 94 Breckenridge Court. According to Ms. Savage, (See Defendant's Exhibit D) she never spoke to the Investigator Talley at the hospital, nor did she tell him she had no idea why Mr. Garth would be in Elmore County.  She stated she did not speak to the affiant until early the next morning around 6:00 a.m. and she spoke to him by phone.  She stated in her conversations with Investigator Talley she advised him that Mr. Garth lived at the residence of 94 Breckinridge Court and that she had assisted him in signing the rental agreement for the house.  Thus at the time of the submission of Investigator Talley's affidavit for search warrant, he knew 94 Breckinridge Court was in fact the residence of Mr. Garth, but he chose to omit this fact from the affidavit.

The affiant's theory as stated in the affidavit is that Mr. Garth was in his vehicle outside his residence when he was approached and shot in car while it was parked in the drive way at 94 Breckinridge Court.  Immediately after the shooting Mr. Garth sped from his driveway driving across the next door neighbor's lawn at a high rate of speed, spinning tires and tearing up the turf.  He then made two telephone calls from his car as he drove himself to the Sonic in Millbrook.  This theory is based upon Mr. Bloch's daughter allegedly hearing two gunshots around 11:00 p.m. and the fact there was a shell casing found in the drive way similar to the one found at the Liberty service station, indicating that Mr. Garth must have been shot in the drive way and fled to the sonic where he called 911.  The problem with this theory is that all of Mr. Bloch's recorded events would have occurred well after the shooting took place.  The actual shooting occurred around 10:30 pm. not 11:00 p.m.  Furthermore, the affidavit fails to state Mr. Bloch's daughter was at home when she allegedly heard the gunshots.

The affidavit must establish some nexus between the inside of the residence of 94 Breckenridge Court and probable cause to believe evidence of the shooting would be found within the residence.  Mr. Garth is not the perpetrator.  There was no blood found outside of the house, nor was there any broken glass.  There was no blood found on the drive way, on the sidewalk, on the front porch or any other location around the house to suggest after he was shot, Mr. Garth exited the vehicle and went into the residence.  Even if the shooting did take place in the driveway as suggested in the affidavit, there is no evidence of any kind to suggest evidence of

the shooting would be found inside the house. To the contrary, under the Affiant's theory spelled out in the affidavit, the defendant was shot in the driveway of 94 Breckinridge Court, in an effort to get away, immediately left the residence at a high rate of speed, tearing up the neighbor's lawn and drove to the sonic speaking to his sister and Ms. Daniels by phone along the way. Under this theory of the offense, there is no way to establish probable cause to believe any evidence of the crime would be found in the residence located at 94 Breckinridge Court unless you represented to the court you were unsure who resided at 94 Breckinridge Court and perhaps the perpetrator of the crime had a connection to the residence where he would be inclined to enter the residence after the shooting in an attempt to hide evidence of the crime. The affidavit does not state if the house was secure when law enforcement first arrived to investigate, suggesting someone might have had access to the inside of the residence.

Finding probable cause based upon submitted affidavit, completely ignores the dying declaration made by Mr. Gath stating he was shot at the Liberty gas station on Deatsville Highway. This statement was corroborated by the physical evidence in that a shell casing was found in the area where he stated he had been shot. The physical evidence suggests at least two shots were fired through the driver's side window striking Mr. Garth two times in the left side of his chest while he sat in his car. The area to be searched in the search warrant was the residence of 94 Breckenridge Court and / or any vehicles on the property for, "firearms, ammunition, spent ammunition casings and any other evidence related to the

discharging of a firearm or physical altercation". If the government's theory is that 94 Breckenridge Court was the residence of Mr. Garth what possible theory of the crime could there be to indicate evidence of the shooting would be found inside the residence? It is undisputed Mr. Garth was inside of his vehicle when he was shot. The shell casing found at the residence was outside in the driveway. Simply put, unless the car was parked in Mr. Garth's living room when he was shot there is no evidence presented in the affidavit to suggest any of items sought in the search warrant would be found inside of the residence.

The defendant alleges the affidavit used to obtain the initial search warrant issued by Elmore County District Judge Gleen Goggans deliberately withheld the fact that Investigator Talley knew Mr. Garth resided at 94 Breckinridge Court. By withholding this material fact, Investigator Talley could argue the perpetrator of the shooting could have had some connection and / or access to the residence and could have entered the residence in order to hide evidence of the crime. However under the theory stated in Investigator Talley's affidavit, if the house belonged to Mr. Garth, why would someone go into Mr. Garth's house after shooting him in his driveway to hide evidence of the shooting? If this material fact had been known to the magistrate it would have precluded the finding of probable cause to search the residence.    Furthermore, the actual evidence of the crime is contrary to Investigator Talley's theory of the crime. The available testimony and physical evidence strongly supported Mr. Garth was shot inside his vehicle while it was parked at the Liberty Convenience Store several miles away from the residence.

The initial search warrant should have never been issued upon probable cause. The warrant lacking probable cause yielded poisonous fruit which was the basis for the second search warrant. Simply put, without the tainted evidence obtained through the first search warrant, no probable cause existed for the issuance of the second search warrant.

WHEREFORE the claimant prays this honorable court will hold the search of the residence of 94 Breckenridge Court was without probable cause and that the deliberate withholding of evidence precludes the government from arguing a good faith exception under Leon existed making the search of the residence lawful and suppress any and all evidence obtained from the fruit of the first search warrant.

Respectfully submitted on this the 12th day of April, 2019.

s/ Michael L. Kidd
of counsel

## CERTIFICATE OF SERVICE

I hereby certify that on April 12th, 2019, I electronically filed the forgoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:


Rand R. Neeley
Assistant United States Attorney
Post Office Box 197
Montgomery, AL  36101

s/Michael L. Kidd
**MICHAEL L. KIDD (KID001)**
Attorney for the Defendant
138 Adams Ave. Ste. 3
Montgomery, AL  36104
Telephone:    (334) 834.5433
uakidd@gmail.com



## AFFIDAVIT FOR SEARCH WARRANT

**STATE OF ALABAMA**          *

                                             *

**COUNTY OF ELMORE**         *

Before me, Glenn Goggans, District Judge of Elmore County Alabama, the undersigned duly sworn, deposes and says that:

"My name is, James Talley, I am a Sergeant with the Elmore County Sheriff's Office and I am currently assigned to the Investigative Division. I have been employed with the Sheriff's Office for the past 15 years. I have personally lead investigations and assisted with the investigations of thousands of crimes while assigned to both the Patrol and Investigative Divisions. I know that the preservation and collection of all evidence is imperative to the development of a comprehensive investigation.

The affiant further states that he has reason to believe, probable cause to believe and does believe that evidence related to the crimes of, *Discharging Firearm into an Occupied Vehicle* and *Assault 1st*, will be found in the residence at 94 Breckenridge Court Deatsville, in Elmore County Alabama. This evidence includes firearms, ammunition, spent ammunition casings and any other evidence related to the discharging of a firearm or physical altercation.

Directions to the residence are as follows; leaving the Elmore County Judicial Complex turn south on U. S. Highway 231 and travel approximately one mile to the intersection of Coosa River Parkway also known as Alabama Highway 14. Travel approximately 3 miles and turn right, continuing on Alabama Highway 14 also known as Elmore Road. Travel approximately 5.5 miles to the intersection Alabama Highway 14 and Alabama Highway 143. Turn left continuing on Alabama Highway 14 for approximately 4 miles to the intersection of Deatsville Highway. Turn right onto Deatsville Highway and travel approximately 5 miles to the intersection of Breckenridge Place. Turn right on Breckenridge Place and travel approximately 100 feet to the intersection of Breckenridge Court. Turn right onto Breckenridge Court and 94 Breckenridge Court is the 5th residence on the right. The residence is a single story, brick residence with attached garage and

1

privacy fence surrounding the back yard. The residence has a black mail box near the driveway and roadway that designates it as 94.

The facts tending to establish the foregoing grounds for the issuance of a search warrant which are as follows:

On May 13, 2016 at 10:48pm Millbrook Police Department responded for a call for service at the Sonic Drive-In at 77 Dudley Drive in Millbrook, in reference to an individual who was shot. Upon arrival Millbrook Police Department officers made contact with the individual who was shot and identified him as Rodriquez Lakeith Garth. Mr. Garth was conscious but had two gunshot wounds to his left torso. Mr. Garth told law enforcement that an unknown black male shot him near the Liberty Convenience Center at 154 Deatsville Highway, while he was in his vehicle.

At 11:05pm the Elmore County Sheriff's Office received a call from 74 Breckenridge Court in Deatsville. The caller advised that the next door neighbor's wife knocked on his door and stated he husband had been shot and was in the back yard at the residence at 94 Breckenridge Court. Deputies began responding but the call was dismissed after it was discovered the call was in conjunction with the shooting call from Sonic Drive-In in Millbrook.

The complainant called the Sheriff's Office back a short time later to report that there were several vehicles that arrived and left from the residence at 94 Breckenridge Court. The complainant was advised that the offense occurred in Millbrook's police jurisdiction. The complainant contacted Millbrook Police Department and advised them that that his daughter heard what sounded like two gun shots around 11:00pm on the same evening.

Deputy Foster with Elmore County Sheriff's Office went to the residence at 94 Breckenridge Court and found one spent shell casing, in the driveway outside the garage. He also discovered vehicle tire tracks leading from the driveway at 94 Breckenridge Court crossing the neighbor's front yard before going off the curb onto the roadway. The vehicle that made the tracks appeared to be driving quickly as it drove across the sod causing pieces of grass and soil to be pulled up from the sod as the tires spun. The location of the tire tracks appeared to have been coming from the garage.

2

Three vehicles were located at the residence, two in the driveway and one in the garage. There was also a vacant space in the garage where it appeared another vehicle had been parked at one time. In the driveway of the residence was a 2007 Cadillac DTS, tag # 3AF2181, registered in the name of Ruby Barton, Mr. Garth's mother. The second vehicle in the driveway was a 2000 Ford Ranger, tag# 3AV5100, registered in the name of Kenyse Savage, Mr. Garth's sister. The vehicle in the garage could not be identified.

John Bloch, the neighbor at 74 Breckenridge Court stated that he had been sleeping when vehicle horns blowing and then about 10 minutes later his door bell rang. When he answered the door a female told him her husband had been shot and was laying in the backyard of the residence at 94 Breckenridge Court. Mr. Bloch and his wife walked outside to help the woman as he asked the woman to go into the residence and turn on the backyard lights so they could see due to the darkness. The woman told Mr. Bloch that she did not have a key and he asked her to turn on the headlights of the two vehicles parked in the driveway of the residence. The woman told Mr. Bloch again that she did not have a key to either one of the vehicles in the driveway. Mr. Bloch said he opened the gate to the privacy fence and looked into the back yard but did not walk in. Mr. Bloch said he did not see anything and at about that time the woman was told over her cell phone that the victim was in Millbrook. She got into her vehicle and left the residence. Mr. Bloch advised the woman did not cause the tire tracks in his front yard when she left and he did not see any of the vehicles that came to the residence after the woman left drive across his front lawn either.

Mr. Garth was transported to Baptist Medical Center South where he underwent surgery and was listed in serious condition in SICU. Mr. Garth was not able to provide law enforcement any additional information at the hospital and will not be able to communicate for at least 24 hours or longer.

Mr. Garth's family, including his mother and two sisters, were contacted at Baptist Medical Center South and advised they did not know what Mr. Garth was doing in Elmore County and they had no knowledge of him staying or frequenting a residence in Elmore County.

Shanda Daniels, was identified as the woman whom asked for assistance from the neighbor at 74 Breckenridge Court. Ms. Daniels stated that she received a call from Mr. Garth around 10:30pm advising he had been shot. Ms. Daniels said she went to 94 Breckenridge Court because that was the only location she knew Mr. Garth would go to in Elmore County. Ms. Daniels stated

that Mr. Garth did not provide any information regarding the shooting. Ms. Daniels advised she talked to Mr. Garth on the telephone for just a couple minutes.

Mr. Garth's sister, Kenyse Savage, stated that at 10:40pm the same date, Mr. Garth called her and stated he had been shot and was driving for help. Mr. Garth advised his sister that he was on a back road and did not know his exact location. Mrs. Savage advised him to find a landmark where he could call 9-1-1 for help. Mrs. Savage stated that she was on the telephone with Mr. Garth between 3-4 minutes but he did not provide her with any information related to the shooting.

Mr. Garth's residence is about 5 miles from the Liberty Convenience Center, which would take several minutes to travel to from Mr. Garth's residence. The main road between the victim's residence and Millbrook, Deatsville Highway, is a two lane rural road, supporting the assertion that Mr. Garth was shot at 94 Breckenridge Court and traveled several miles while making several phone calls.

Investigators from Elmore County Sheriff's Office went to the Liberty Convenience Center in Millbrook to check for surveillance video and to search the area. No video was able to be viewed but the investigators did locate a single spent shell casing similar to the casing found at 94 Breckenridge Court.

Based on the foregoing facts and probable cause the affiant believes that the aforementioned evidence related to the crimes of, *Discharging Firearm into Occupied Vehicle* and *Assault 1st*, will be located in the residence at 94 Breckenridge Court Deatsville in Elmore County Alabama

INVESTIGATOR JAMES TALLEY

SWORN TO AND SUBSCRIBED BEFORE ME THIS THE 14th DAY OF my ,
2015 at __8__ : __10__ A m.

GLENN GOGGANS
DISTRICT JUDGE
ELMORE COUNTY

MAY 2015

4

**Defendant's Exhibit B**

STATE OFALABAMA                    )
MONTGOMERY COUNTY                  )

## AFFIDAVIT OF KENYSE C. SAVAGE

COMES NOW  Kenyse C. Savage  hereby provides the following statement certifying under oath subject to perjury as of the Laws of the State of Alabama state that the forgoing statement is a true and correct statement of fact:

My name is Kenyse C. Savage and I am the sister to Rodiquez Garth.  In May of 2016, my brother was renting a house at 94 Breckinridge Court in Deatsville, Alabama.  I assisted my brother in obtaining the lease.  He had credit issues in his past and did not qualify to purchase or lease a house.  I executed the lease because I qualified; the house was rented through Re-Max realty for $1,200.00 per month.  I also had to assist in having the utilities turned on in my name due to my brother's credit.  My brother paid the rent each month as well as all of the utilities.  He lived alone at the 94 Breckinridge Court residence, and to my knowledge other than staying at my mother residence from time to time this was his only residence.

On the night my brother was shot, I received a call from him around ten thirty-five p.m.  He advised me he had been shot by an unknown assailant.  He appeared to be disoriented and confused.  I advised him to stay on the phone with me until he could find some landmark where he could tell me his location or he could safely ask for help.  He advised me he was pulling into Sonic in Millbrook, Alabama.  I was on the phone with him for three to four minutes.

I went to Baptist South Hospital with my brother to be treated for his injuries.  While at the hospital I was never interviewed by any members of law enforcement.  Neither I nor my sister told any members of law enforcement we had no knowledge as to

why our brother would have been in Elmore County or at the Breckinridge Court residence.   To the contrary, if asked, I would have provided law enforcement with knowledge of my brother living at the 94 Breckinridge Court address since I had leased the residence for his benefit.   To my knowledge I never saw my sister speak to any members of law enforcement while we were at the hospital.   I did observe my mother speaking to an investigator; however the investigator separated my mother from my sister and me where I could not over hear his conversation with her.

The following morning around 6 a.m., I received a call from Investigator James Talley.   We spoke for several minutes where I advised him that the residence at 94 Breckinridge Court was my brother's house.   I also advised him the utilities were in my name and I had assisted with the lease of the house because he had credit problems. Further, affiant sayeth not.

Signed on this the ___19th___ day of January, 2019.

_Kenyse C. Savage_
Kenyse C. Savage

**Subscribed and sworn to** before me on this the ___19th___ day of January, 2019.


_William G. _____
NOTARY PUBLIC

My Commission Expires: __4/5/2021__

**Defendant's
Exhibit C**

# SEARCH WARRANT

**STATE OF ALABAMA**   *

                       *

**COUNTY OF ELMORE**   *

## TO THE SHERIFF OR ANY PEACE OFFICER OF SAID COUNTY:

THE ATTACHED AFFIDAVIT having been sworn to me by James Talley, before me this day, based upon facts stated therein and probable cause having been found, in the name of the People of the State of Alabama, I command that you and/or any persons you designate search, the residence at 94 Breckenridge Court Deatsville in Elmore County Alabama, along with any vehicles on the property for firearms, ammunition, spent ammunition casings and any other evidence related to the discharging of a firearm or physical altercation, and make return to this court within ten (10) days.

ISSUED TO JAMES TALLEY, UNDER MY HAND AT 8.10 O'clock A.M., this 14th day of may , 2015.

_____
GLENN GOGGANS
DISTRIC COURT JUDGE
ELMORE COUNTY



**Defendant's
Exhibit D**

# SEARCH WARRANT

**STATE OF ALABAMA  \***

**                                    \***

**COUNTY OF ELMORE  \***

## TO THE SHERIFF OR ANY PEACE OFFICER OF SAID COUNTY:

THE ATTACHED AFFIDAVIT having been sworn to me by James Talley, before me this day, based upon facts stated therein and probable cause having been found, in the name of the People of the State of Alabama, I command that you and/or any persons you designate search, the residence at 94 Breckenridge Court Deatsville in Elmore County Alabama, along with any vehicles on the property for firearms, ammunition, illegal narcotics, drug packaging materials, currency, ledgers, notes, computers, cellular telephones, mediums used for storing electronic data (CD-R, DVD-R, Thumb drive, etc.),  measuring scales and any stolen property and make return to this court within ten (10) days.

ISSUED TO JAMES TALLEY, UNDER MY HAND AT 11:02 O'clock A .M., this 14th day of may , 2015.

GLENN GOGGANS
DISTRIC COURT JUDGE
ELMORE COUNTY