IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Act. No.: 2:16-cv-985-ECM |
| | ) | (WO) |
| $389,820 IN UNITED STATES CURRENCY, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

This is an action for civil forfeiture of the Defendant property brought by the United States of America pursuant to 21 U.S.C. § 881(a)(6).[1] On July 27, 2017, Claimant Ruby Barton filed an answer and a verified claim seeking the Defendant property. (Doc. 42). Now pending before the Court is Claimant Barton's motion to suppress, filed on April 12, 2019. (Doc. 75). The Government filed a response to the motion to suppress on April 29, 2019 (doc. 80), and the Claimant filed a reply on May 13, 2019 (doc. 84). For the reasons that follow, the Claimant's motion to suppress (doc. 75) is due to be denied.

---

[1] 21 U.S.C. § 881(a)(6) provides for the forfeiture of "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

# I. Background

*A. Facts from Investigator James Talley's Affidavit.*

On May 13, 2016 at 10:48 p.m., Millbrook Police were dispatched to the Sonic Drive-In at 77 Dudley Drive in Millbrook, Alabama. Officers approached a vehicle containing Rodriguez Lakeith Garth, who was shot twice in the torso, but was still conscious. Garth told police that he was shot while he was sitting in his vehicle near the Liberty Convenience Center at 154 Deatsville Highway.

At 11:05 p.m., the Elmore County Sheriff's Office received a call from John Bloch, a resident of 74 Breckenridge Court in Deatsville. Bloch reported that his neighbor, Shanda Daniels, came to his house and told him that her husband, Rodriguez Lakeith Garth, had been shot and was laying in the backyard at 94 Breckenridge Court. Bloch reported that he and his wife had gone to the neighbor's house at 94 Breckenridge Court and attempted to look into the backyard. However, it was too dark to see, and they didn't enter the backyard. Bloch told the deputy that shortly after asking him for help, Daniels received a call informing her that Garth was not at 94 Breckenridge Court, and she left.

Deputies determined that Bloch was referring to the same Garth who had already been attended to at the Sonic Drive-In. Accordingly, they did not dispatch to Breckenridge Court at that time. Soon thereafter, Bloch called the Sheriff's Office again to report that several vehicles arrived at and left from the residence at 94

Breckenridge Court. The Sheriff's Office advised Bloch to contact the Millbrook Police Department, as Breckenridge Court was within their jurisdiction. Bloch then contacted Millbrook Police and relayed the same, and he also told Millbrook Police that his daughter heard two gunshots around 11:00 p.m. that evening.

An Elmore County Sheriff's Deputy went to 94 Breckenridge Court and found one spent shell casing in the driveway outside the garage. He also discovered tire tracks, which originated in the driveway at 94 Breckenridge Court and crossed through the neighbor's yard, tearing up the grass. Based on the condition of the neighbor's yard, it appeared the vehicle that left the tracks was moving quickly. Investigators also went to the Liberty Convenience Center, where Garth claimed he had been shot, and found a shell casing similar to the one located at 94 Breckenridge Court.

During the investigation, Garth's sister told investigators that Garth called her at 10:40 p.m. and informed her that he had been shot and was driving for help. Garth stated that he was driving down a backroad, and he remained on the line with her for three to four minutes. Shanda Daniels reported to investigators that Garth called her as well. In this call, Garth told Daniels that he had been shot, but because he did not give her any information about the shooting, she went to 94 Breckenridge Court, believing he was there.

Investigator James Talley of the Elmore County Sheriff's Office presented all of the preceding facts in an affidavit to Elmore County District Judge Glenn Goggans for the purpose of obtaining a search warrant for 94 Breckenridge Court. Investigator Talley concluded that the timing of Garth's phone calls and the distance between 94 Breckenridge Court and the Liberty Convenience Center indicated that Garth had been shot at 94 Breckenridge Court and then traveled several miles along Deatsville Highway. Accordingly, Investigator Talley requested a search warrant for 94 Breckenridge Court to locate firearms, ammunition, spent ammunition casings and any other evidence related to the discharge of a firearm or a physical altercation.

Based on Investigator Talley's affidavit, Judge Goggans found that probable cause existed and issued a search warrant for 94 Breckenridge Court for the purpose of locating firearms, ammunition, spent ammunition casings and any other evidence related to the discharge of a firearm or a physical altercation.

*B. Subsequent Investigation.*

Pursuant to the search warrant, officers discovered several large bundles of marijuana in the guest bedroom of 94 Breckenridge Court. The officers then sought and obtained a second, more extensive search warrant authorizing them to search 94 Breckenridge Court, and any vehicles on the property, for firearms, ammunition, illegal narcotics, drug packaging materials, currency, ledgers, notes, computers, cellular telephones, mediums used for storing electronic data, measuring scales, and

any stolen property. During the search of 94 Breckenridge Court pursuant to the second search warrant, agents seized nineteen bundles of marijuana (over 200 kilograms), five bags of cocaine (over 1.6 kilograms), a digital scale, two pistols, six cell phones, assorted jewelry, AR 15 magazines, and over $400,000 in United States Currency found both in the residence and in the trunk of a 1972 Chevrolet Chevelle parked on the property. Agents impounded Garth's Mercedes, the 1972 Chevelle, and a Cadillac CTS that was also parked on the property. Several of these seizures are the subjects of the instant civil forfeiture action.

In her motion to suppress, the Claimant alleges that the initial search warrant for firearms, ammunition, spent ammunition casings and any other evidence related to the discharge of a firearm or a physical altercation was not properly supported by probable cause. Accordingly, the Claimant asserts that all evidence seized subsequent to the issuance of the initial search warrant is due to be suppressed.

## II. Analysis

*A. Standard of Review.*

When a motion to suppress challenges a judge's probable cause determination underlying the issuance of a warrant, the reviewing court must look to the information that was presented to that judge. *See United States v. Shabazz*, 887 F.3d 1204, 1214 (11th Cir. 2018) (analyzing the search-warrant affidavit in reviewing the warrant's sufficiency). In so doing, a reviewing court "is not to conduct a *de novo*

determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984); *see Illinois v. Gates*, 462 U.S. 213, 236 (1983) ("[T]he traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.") (internal quotations omitted).

"[T]he practical nature of the magistrate's decision justifies 'great deference' upon review and calls for upholding the magistrate's findings even in marginal or doubtful cases." *United States v. Nixon*, 918 F.2d 895, 900 (11th Cir. 1990) (quoting *United States v. Lockett*, 674 F.2d 843, 845 (11th Cir. 1982)); *see United States v. Carroll*, 886 F.3d 1347, 1351 (11th Cir. 2018) ("We give great deference to a lower court's determination of probable cause."); *Brown v. Benefield*, 757 F.Supp.2d 1165, 1178 (M.D. Ala. 2010) ("A reviewing court should also give great deference to a neutral magistrate's determination of probable cause.").

  B. *The Search Warrant & Affidavit.*

Motions to suppress evidence are appropriate in civil forfeiture proceedings because the seizure and subsequent civil forfeiture of assets implicates the Fourth Amendment. *Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 702 (1965) (holding

that the Fourth Amendment is applicable to civil forfeiture proceedings); *United States v. $80,633.00*, 512 F.Supp.2d 1196, 1202 (M.D. Ala. 2007) ("Motions to suppress are appropriate in civil forfeiture cases . . . ."), *aff'd*, 340 Fed.Appx. 579 (11th Cir. 2009).

"[A] search warrant affidavit need only contain sufficient information to conclude that a fair probability existed that seizable evidence would be found in the place sought to be searched. The affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *Shabazz*, 887 F.3d at 1214 (internal citations omitted). "When determining whether a search-warrant affidavit established probable cause, due weight is given to inferences drawn from the facts by the issuing judge and local law-enforcement officers." *United States v. Sparks*, 806 F.3d 1323, 1337 (11th Cir. 2015).

Burton only challenges the first search warrant issued by Judge Glenn Goggans, which authorized police officers to search 94 Breckenridge Court for firearms, ammunition, spent ammunition casings, and other evidence related to the discharge of a firearm or physical altercation. Investigator Talley's affidavit provided ample evidence to establish probable cause for this warrant. The affidavit mentions several calls to law enforcement from John Bloch, one referring to a possible gunshot victim in the backyard of 94 Breckenridge Court and the others

7

referring to vehicle activity at 94 Breckenridge Court and the sound of two gunshots. Further, the affidavit specifies that shell casings were found both at 94 Breckenridge Court and at the Liberty Convenience Center, where Garth claims he was shot. Even further, the affidavit established that there were vehicle tire tracks originating from the garage at 94 Breckenridge Court that continued through a neighbor's yard, evidencing a fast-moving vehicle. Lastly, Investigator Talley observed that, based on Garth's location and the timing his phone calls, the evidence supported a conclusion that Garth was shot at 94 Breckenridge Court. The facts and conclusions advanced by Investigator Talley clearly establish the requisite links between Garth, his shooter, and 94 Breckenridge Court. The affidavit indicates more than "a fair probability" that "seizable evidence" relating to Garth's shooting would be found at 94 Breckenridge Court. *See Shabazz, supra*. Utilizing common sense to examine the totality of the circumstances, the Court concludes that the information in Investigator Talley's affidavit sufficiently established the requisite probable cause.

Accordingly, there is substantial evidence in the search-warrant affidavit that supports Judge Goggans's decision to issue the warrant. The motion to suppress is denied.

*C. Suppression is not Warranted.*

Even if the warrant were issued without sufficient probable cause, the Court finds that the *Leon* good-faith exception would apply to officers' reliance on the first

search warrant. *See United States v. Leon*, 468 U.S. 897, 926 (1984). Generally, evidence that is seized as the result of an unlawful search is excluded via the "exclusionary rule." *Murray v. United States*, 487 U.S. 533, 536–37 (1988) ("The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search . . . [and] also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence."); *e.g., United States v. Garrott*, 745 F.Supp.2d 1206, 1214 (M.D. Ala. 2010) ("Because the search of the Defendants' backyard violated Defendants' Fourth Amendment rights, the evidence . . . is due to be suppressed).

In *United States v. Leon*, the Supreme Court recognized a "good faith" exception to the exclusionary rule for searches conducted in good faith pursuant to later-invalidated warrants. *Leon*, 468 U.S. at 926; *accord United States v. Johnson*, --- F.3d ----, 2019 WL 1615283 (11th Cir. April 16, 2019). If an "officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant . . . [is] objectively reasonable," the seized evidence should not be suppressed. *Leon*, 468 U.S. at 922; *see United States v. Blake*, 868 F.3d 960, 975 (11th Cir. 2017) (holding that the *Leon* exception applied where the sufficiency of the search warrants was such "a close question" that no officer could be faulted for relying on them).

9

The *Leon* Court identified four situations where evidence obtained pursuant to a search warrant should be suppressed: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role," acting as a rubber stamp; (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where, depending upon the circumstances of the particular case, a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923 (internal citations omitted).

None of these four situations apply to the search warrant at issue in this motion. The Claimant argues that no reasonable person would believe evidence of the shooting would be found inside the residence. She further complains that Investigator Talley failed to conclusively testify that 94 Breckenridge Court was Garth's residence. The Court finds that the Claimant falls far short of establishing that Talley included information in his affidavit that he "knew was false or would have known was false except for his reckless disregard of the truth." *See Leon*, *supra*.

This warrant was supported by probable cause. Even if it wasn't, no officer could be faulted for relying on it. As stated *supra*, Investigator Talley's affidavit

provided several connections between Garth, his shooter, and 94 Breckenridge Court. Accordingly, any reliance by officers on the search warrant and attached affidavit was "objectively reasonable." Thus, the Court concludes that no evidence seized in reliance on this search warrant should be suppressed.

### III. Conclusion

For the foregoing reasons, the Claimant Ruby Barton's motion to suppress (doc. 75) be and is hereby DENIED.

DONE this 24th day of May, 2019.

                                          /s/ Emily C. Marks
                               EMILY C. MARKS
                               CHIEF UNITED STATES DISTRICT JUDGE