IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. Act. No.: 2:16-cv-985-ECM |
| ) | (WO) |
| $389,820.00 IN UNITED STATES ) | |
| CURRENCY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION and ORDER**

This is an action for civil forfeiture of the Defendant property brought by the United States of America pursuant to 21 U.S.C. § 881(a)(6).[1] Now pending before the Court are the Government's motion for summary judgment filed on June 12, 2019, (doc. 90), and Claimant Ruby Barton's motion for summary judgment filed June 13, 2019 (doc. 95). The Government filed a response in opposition to the Claimant's motion for summary judgment on July 8, 2019. (Doc. 97). For the reasons set forth below, the Court concludes that the Government's motion for summary judgment is due to be GRANTED and the Claimant's motion for summary judgment is due to be DENIED.

---

[1] 21 U.S.C. § 881(a)(6) provides for the forfeiture of "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

# I. JURISDICTION AND VENUE

The Court exercises jurisdiction pursuant to 28 U.S.C. § 1345 and § 1355. Venue is proper pursuant to 28 U.S.C. § 1395 and 21 U.S.C. § 881(j).

# II. STANDARD OF REVIEW

## A. Summary Judgment Standard

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact by identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The burden then shifts to the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"[A] court generally must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l*

*Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016). However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018). If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact and the court must grant summary judgment. *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Matsushita Elec. Indus. Co., Ltd.,* 475 U.S. at 587).

**B. Summary Judgment in Civil Forfeiture Cases**

This forfeiture proceeding is governed by the Civil Asset Forfeiture Reform Act ("CAFRA").

*1. The Government's Burden*

Under CAFRA, the United States must prove "by a preponderance of the evidence that the property is subject to forfeiture," that is, that there is a "substantial connection between" the property and illegal drug activity. 18 U.S.C. § 983(c)(1) and (3). Whether the government has shown probable cause for forfeiture is a question of law. *See United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1439 n.22 (11th Cir. 1991). Probable cause in this context is a reasonable ground for belief: something more than mere suspicion but less than prima facie proof. *United States v. Cleckler,* 270 F.3d 1331, 1334 (11th Cir. 2001) (citing *United States v. $121,100.00 in United States Currency,* 999 F.2d 1503, 1506 (11th Cir. 1993)).

Courts have been cautioned in civil forfeiture proceedings "not to dissect strands of evidence as discrete and disconnected occurrences." *United States v. $22,991.00, More or Less, in United States Currency,* 227 F. Supp. 2d 1220, 1235-36 (S.D. Ala. 2002). The

3

Court must instead evaluate the evidence, applying a common-sense view of the realities of normal life in the totality of the circumstances. *See United States v. Carrell,* 252 F.3d 1193, 1201 (11th Cir. 2001).

Pursuant to 21 U.S.C. § 881(a)(6), the government is not required to demonstrate that the seized currency was connected with any particular drug transaction; instead, the government need only show that the money was "related to some illegal drug transaction." *United States v. $242,484.00,* 389 F.3d 1149, 1160 (11th Cir. 2004) (en banc). The Government may use evidence gathered after the filing of a complaint for forfeiture to meet its burden. 18 U.S.C. § 983(c)(2).

*2. The Claimant's Burden*

Once the Government has met its burden, the burden shifts to the Claimant to prove by a preponderance of evidence either a defense to the forfeiture or to prove that the property is not otherwise subject to forfeiture. 18 U.S.C. § 983(d)(1); *United States v. $52,000.00, More or Less, in United States Currency*, 508 F. Supp. 2d 1036, 1040 (S.D. Ala. 2007) (citing *United States v. $21,000.00 in United States Postal Money Orders,* 298 F. Supp. 2d 597, 601 (E.D. Mich. 2003)). "The claimant may meet this burden either by rebutting the government's evidence or by showing that the claimant is an innocent owner."[2] *Cleckler,* 270 F.3d at 1334. If the Government carries its burden, and the Claimant fails to meet her burden, the property will be forfeited. *See Id.*

---

[2] "With respect to a property interest in existence at the time the illegal conduct giving rise to forfeiture took place, the term "innocent owner" means an owner who (i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983 (d)(2)(A)(i-ii).

4

## III. BACKGROUND

**A. The May 13 and 14, 2016 Shooting Investigation**

The facts of this case are largely undisputed. On May 13, 2016, at 10:48 p.m., Millbrook Police were dispatched to the Sonic Drive-In at 77 Dudley Drive in Millbrook, Alabama. Officers approached a Mercedes vehicle and observed two gunshot holes in the driver's side window. Inside the vehicle, officers found Rodriguez Lakeith Garth, who was shot twice in the torso, but was still conscious. Garth told police that he was shot while he was sitting in his vehicle near the Liberty Mart Convenience Center at 154 Deatsville Highway in Millbrook. While attending to Garth, officers found a large sum of U.S. currency in his pocket and inside the Mercedes. Law enforcement seized the money (Defendant $4,550), as well as the jewelry on Garth's person (Defendant Miscellaneous Jewelry). Garth was then transported to Baptist Hospital South in Montgomery, Alabama for treatment, where he later died as a result of his injuries.

A subsequent investigation determined that Garth resided at 94 Breckinridge Court in Deatsville, Alabama. Investigators from Elmore County Sherriff's Office arrived at 94 Breckinridge Court and spoke with a neighbor who reported hearing two gunshots at Garth's residence. The investigators found one spent shell casing in the driveway outside the garage at 94 Breckinridge Court and discovered tire tracks, which originated in the Garth's driveway and crossed the neighbor's lawn, leaving ruts through the grass. Based on the condition of the neighbor's yard, it appeared the vehicle that left the tracks was moving quickly. Investigators believed this evidence indicated that Garth had been shot at 94 Breckenridge Court and then traveled to the Sonic Drive-In before calling 911.

The next morning, on May 14, 2016, an investigator with Elmore County Sherriff's Office obtained a search warrant, signed by an Elmore County District Judge, to search 94 Breckenridge Court for firearms, ammunition, spent ammunition casings, and any other evidence related to the discharge of a firearm or a physical altercation in connection with the shooting of Rodriguez Garth. During an initial sweep of the residence, officers observed several large bundles of what appeared to be marijuana inside a guest bedroom closet. The officers then sought and obtained a second, more extensive search warrant authorizing them to search 94 Breckenridge Court, and any vehicles on the property, for firearms, ammunition, illegal narcotics, drug packaging materials, currency, ledgers, notes, computers, cellular telephones, mediums used for storing electronic data, measuring scales, and any stolen property.

**B. The Search of 94 Breckinridge Court**

Pursuant to the second search warrant, members of the DEA Montgomery Residence Office, along with agents from the Central Alabama Drug Task Force, searched the residence at 94 Breckinridge Court. Officers found and seized eight bundles of marijuana in the closet of the guest bedroom, four totes containing eleven bundles of marijuana weighing 441 pounds, four gallon-sized plastic bags weighing 1.62 kilograms containing what appeared to be cocaine, another bag of suspected cocaine weighing 42.7 grams, a digital scale, two firearms, ammunition, six cellular telephones, assorted jewelry, a large quantity of U.S. currency inside the residence (Defendant $15,780.00) and a large quantity of U.S. currency (Defendant $389,820.00) in the trunk of a 1972 Chevrolet Chevelle located in the garage of the residence, much of which was banded with rubber

bands and packaged in vacuum sealed bags. Agents also seized the Mercedes Garth was driving when he was shot, the Chevrolet Chevelle located in the garage of Garth's residence, and a Cadillac DTS, also discovered at the residence[3]. There was no one present at 94 Breckinridge Court during the search and Garth was the only known resident at this address.

**C. The Forfeiture Action**

The United States filed a Verified Complaint for Forfeiture *In Rem* (doc. 1) of Defendants $389,820.00 in United States Currency, $15,780.00 in United States Currency, $4,550.00 in United States Currency, Defendant 1972 Chevrolet Chevelle, SS 396, and Defendant Miscellaneous Jewelry pursuant to 21 U.S.C., § 881(a)(6), alleging the Defendant properties constituted assets obtained either directly or indirectly from drug trafficking or represents the proceeds of drug trafficking.

Ms. Ruby Barton, the personal representative and executor of the estate of Rodriguez Garth, filed a verified claim on behalf of Garth's estate on February 15, 2017, (doc. 12), alleging that Garth's estate is the lawful owner of all Defendant properties and that the properties were seized as the result of an unlawful search and were therefore not subject to forfeiture.

---

[3] Although agents seized all three vehicles, Defendant Chevrolet Chevelle is the only vehicle listed in the Government's Verified Complaint. (Doc. 1).

# IV. DISCUSSION

## A. The Government's Motion for Summary Judgment

To determine whether summary judgment is proper in this matter, this Court must first decide whether the Government has proved by a preponderance of the evidence that the Defendant property is subject to forfeiture as a matter of law. The Government makes several arguments, which the Court will address in turn.

### 1. *Large Amounts of Cash in Close Proximity to Controlled Substances*

The Government first argues that the large amounts of cash found on Garth's person, in Garth's residence, and in the trunk of the Chevrolet Chevelle parked in the garage attached to Garth's home are probative of illegal drug activity because the currency was found in close proximity to controlled substances. The Eleventh Circuit has stated that while a large quantity of cash alone is insufficient to "demonstrate a connection to illegal drugs, the quantity of cash seized [may be] highly probative of a connection to some illegal activity." *$121,100.00 in U.S. Currency*, 999 F.2d at 1507. The probative value of the currency is even stronger when it is found in close proximity to drugs and drug paraphernalia. *See United States v. $74,000.000 in United States Currency,* 2008 WL 1805432, at *4 (M.D. Ala. 2008) (citing *United States v. $29, 959.00 in United States Currency,* 931 F.2d 549, 553 (9th Cir. 1991)).

Further, in a civil forfeiture action, the physical location of the seized currency in relation to illegal narcotics is "strong circumstantial evidence" that the currency is connected to illegal drug trafficking. *$22,991.00 in United States Currency,* 227 F. Supp. at 1233. More specifically, the precise location of a large quantity of currency can create

a link between the currency and illegal activity. In *United States v. $22,991.00 in United States Currency,* the court found that $22,991.00 was an "unusually large amount of cash to be transported in the trunk of an automobile" and found that storing the seized currency in the trunk of a car was "highly probative . . . circumstantial evidence of a link between this exorbitant amount of cash and illegal drug activity." *Id.* at 1232.

In this case, each of the Defendant currencies, Defendant Miscellaneous Jewelry, and Defendant Chevrolet Chevelle was found in close proximity to drugs or drug paraphernalia. Investigating officers found Defendant $4,550.00 and Defendant Miscellaneous Jewelry on Garth's person when they responded to his 911 call reporting that he had been shot. During the investigation of the shooting, officers concluded that Garth had been shot while in the driveway of his residence and then sped away from the house, as evidenced by tire tracks tearing from Garth's driveway through the neighbor's lawn, before calling police from the parking lot of the Sonic Drive-In in Millbrook, Alabama. Thus, Defendant $4,550.00 and Defendant Miscellaneous Jewelry were found on Garth's person shortly after he fled from his home, where illegal drugs and drug paraphernalia were later discovered.

During the subsequent search of Garth's home,[4] Defendant $15,780.00 was found inside Garth's residence alongside 441 pounds of marijuana, 1.6 kilograms of cocaine, digital scales, firearms, and multiple cellular telephones. Defendant $389,820.00, much of

---

[4] On April 12, 2019, the Claimant filed a motion to suppress (doc. 75), alleging that the initial search warrant was not supported by probable cause and, as a result, the drugs and U.S. currency found in Garth's home were fruit of the poisonous tree. The Court found the initial search warrant was supported by substantial evidence and that suppression of the seized items was not warranted. (Doc. 85).

which was banded with rubber bands and packaged in vacuum sealed bags, was found inside the trunk of Defendant Chevrolet Chevelle, which was parked in the garage attached to Garth's residence where illegal narcotics were discovered.

As previous courts have found, storing large quantities of currency inside one's home or in the trunk of a car rather than using more secure methods, such as a bank account, is very unusual. The large amount of cash, stored in an unusual manner, and found in proximity to the illegal narcotics discovered in Garth's home is highly probative circumstantial evidence of a link between Defendants $4,550.00, $15,780.00, $389,820.00, Miscellaneous Jewelry, Chevrolet Chevelle and illegal narcotics activity.

### 2. *No Evidence of Innocent Ownership*

The Government next argues that Garth's estate has failed to provide any evidence of legitimate income sufficient to explain why he had such large amounts of cash, several vehicles, and expensive gold and diamond jewelry. In order to prove innocent ownership, the claimant must do "more than show the existence of possible legitimate sources of cash." *United States v. $41,305.00 in United States Currency & Traveler's Checks,* 802 F.3d 1339, 1345 (11th Cir. 1991). Garth's estate must instead establish his financial transactions and prove that the Defendant properties were the result of an innocent source of ownership unrelated to any drug trafficking. *United States v. $130,052.00 in United States Currency,* 909 F. Supp. 1506, 1517–18 (M.D. Ala. 1995).

In this case, the Claimant does not even attempt to assert a legitimate source of the Defendant currencies and property. Instead, as discussed infra, the Claimant merely states that Garth is dead and cannot divulge the source or origin of the money. The Government

and Claimant have engaged in discovery in this matter and, despite requests from the Government, the Claimant has not revealed any legitimate source to explain Garth's wealth of over $400,000.00 in cash, gold and diamond jewelry, and multiple automobiles. As a result, Garth's lack of evidence of innocent ownership is another factor weighing in favor of forfeiture.

### 3. *Garth's Criminal History*

A claimant's prior narcotics history is probative evidence to be considered in forfeiture actions. A claimant's lack of legitimate income combined with a "narcotics related criminal history" weighs in favor of satisfaction of the Government's burden. *United States v. $52,000.00, More or Less, In United States Currency*, 508 F. Supp. 2d 1036, 1041-43 (S.D. Ala. 2007). Prior convictions of offenses involving controlled substances are relevant to the question of whether the currency was substantially connected to illegal drug activity. *United States v. Currency, $21,175.00, in United States,* 521 F. App'x 734, 737 (11th Cir. 2013); *see also $121,100.00 in United States Currency,* 999 F.2d at 1507 (finding that a claimant's history of narcotics arrests and convictions was a critical factor weighing in favor of forfeiture).

Here, it is undisputed that Garth had been convicted of trafficking cocaine in Montgomery County, Alabama in 2006. Garth was also charged in two drug-related felony cases in Chambers County, Alabama just a few weeks prior to his death in 2016. These offenses, combined with Garth's failure to prove a source of legitimate income, are yet another factor in favor of finding that forfeiture is proper in this matter.

In determining whether the Government has carried its burden, this Court cannot weigh each of these factors individually as disconnected strands of evidence. Instead, the Court must evaluate the evidence by applying a "common-sense view of the realities of normal life in the totality of the circumstances." *Carrell,* 252 F.3d at 1201. Given that the Defendant currencies, vehicle, and jewelry were found in close proximity to illegal narcotics, the unusually large quantities of currency were stored in Garth's home and the trunk of a vehicle rather than in a bank account, and Garth's known criminal history involving drugs and drug trafficking, the Court finds that there is a substantial connection between the Defendant properties and illegal drug activity. As such, the Court finds that the Government has met its burden of proving by a preponderance of the evidence that the seized property is subject to forfeiture.

The burden now shifts to the Claimant to prove either a defense to the forfeiture or to prove that the property is not otherwise subject to forfeiture.

## B. The Claimant's Motion for Summary Judgment

The Claimant argues that the Government has failed to establish by a preponderance of the evidence that the Defendant currencies and property are subject to forfeiture because the facts do not prove the use of the funds and property in violation of the controlled substances laws of the United States.[5] To support her claims, Claimant recites various

---

[5] In her motion for summary judgment, the Claimant again challenges this Court's jurisdiction, *in rem*, as to the subject Defendant properties. The Claimant has previously litigated this issue in this very case. The Court found federal jurisdiction was proper in this matter (doc. 37) and will not revisit this issue.

sections of 21 U.S.C. § 881 and makes arguments alleging a failure to connect the seized property to a particular drug transaction.

The Claimant does not offer any evidence supporting her allegations. She cites only to the Complaint in her motion; however, the Complaint is not evidence. Instead, the Claimant relies on conclusory statements without reference to supporting facts.[6] As the Eleventh Circuit has held, "conclusory allegations without specific supporting facts have no probative value." *Jefferson,* 891 F.3d at 924–25. As a result, the Court must rely on the evidence before it, which was proffered by the Government, relating to the proximity of Garth's cash in relation to illegal narcotics, Garth's prior criminal history, and Garth's failure to provide a legitimate income source. The Government's evidence is sufficient to find a substantial connection between the property seized and illegal drug activity.

Further, the Claimant appears to misapprehend the law with regard to the Government's burden. The Government is not required, as Claimant alleges, to prove that the seized currency was connected to any particular drug transaction. Rather the Government need only show that the money was "related to some illegal drug activity." *$242,484.00 in U.S. Currency,* 389 F.3d at 1160. The Court is satisfied that the Government has done so.

Finally, the Claimant argues that Garth's inability to reveal the source of his large quantities of cash does not establish that the Defendant currencies are the proceeds of

---

[6] The Claimant has also failed to comply with this Court's Uniform Scheduling Order requiring the parties to file briefs and supporting evidence separately from their motions and to support claims with "specific references, by page and line, to where evidence can be found" in supporting documents. (Doc. 70 at 2.). The Claimant's motion uses improper citations, does not include pinpoint cites, and offers no evidence for this Court to consider in evaluating her arguments against forfeiture.

illegal drug activity. The Claimant relies on precedent outside of this circuit to argue that the Government may not seize property in an effort to force citizens to provide explanations for their wealth. *U.S. v. $506, 231.00 in U.S. Currency,* 125 F.3d 442, 454 (7th Cir. 1997) ("The government may not require explanations for the existence of large quantities of money absent its ability to establish a valid narcotics-nexus."); *United States v. One Residence and Attached Garage of Anthony J. Accardo*, 603 F.2d 1231, 1234 (7th Cir. 1979) ("Property of private citizens simply cannot be seized and held in an effort to compel the possessor to 'prove lawful possession.'").

The Claimant alleges that because Garth is dead, he is incapable of revealing the origin of his wealth; information which she argues should remain private absent cause to show otherwise. The Claimant provides no evidence supporting this claim and instead attempts to dispute her burden of proving a legitimate source for Garth's money and property. The Claimant fails recognize that once the Government has carried its burden, the Claimant must provide proof of innocent ownership, or otherwise rebut the Government's evidence, to successfully avoid forfeiture. The Government submitted evidence proving the Claimant was given the opportunity to provide documentation on behalf of Garth's estate which could explain how he accumulated such vast quantities of cash. The Claimant has provided no such documentation, has proffered no rebuttal to the Government's evidence, and has therefore not carried her burden.

This Court concludes that the circumstances surrounding the discovery of the Defendant currencies and other property, including the presence of drugs, combined with Garth's criminal history and the Claimant's failure to prove innocent ownership, provides

14

the critical nexus to drug trafficking required to establish by a preponderance of the evidence that the Defendant properties in this matter are subject to forfeiture as a matter of law.

V. **CONCLUSION**

Accordingly, it is ORDERED as follows:

1. The Government's motion for summary judgment (doc. 90) is GRANTED;

2. The Claimant's motion for summary judgment (doc. 95) is DENIED;

3. Judgment is entered in favor of the Government. As such, the Defendants $4,550.00, $15,780.00, $389,820.00, 1972 Chevrolet Chevelle, and Miscellaneous Jewelry are FORFEITED to the United States; and

4. The Government's motion for interlocutory sale of Defendant Miscellaneous Jewelry, filed April 15, 2019, (doc. 76), and motion for interlocutory sale of Defendant 1972 Chevrolet Chevelle, filed April 17, 2019, (doc. 78), are DENIED as moot.

DONE this 4th day of October, 2019.

                                              /s/ Emily C. Marks
                                        EMILY C. MARKS
                                        CHIEF UNITED STATES DISTRICT JUDGE